UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 09-20613 |
| Plaintiff, | Sean F. Cox<br>United States District Judge |
| vs. | Michael Hluchaniuk |
| DOUGLAS SAM RAY, | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**AMENDED\* REPORT AND RECOMMENDATION
REGARDING DEFENDANT'S MOTION TO SUPPRESS (Dkt. 15)**

**I.   Procedural History**

Defendant Douglas Sam Ray was indicted on December 16, 2009, and charged with being a felon in possession of ammunition, in and affecting commerce. (Dkt. 3). The present motion to suppress was filed on January 29, 2010. (Dkt. 15). District Judge Sean F. Cox referred that motion to the undersigned on the same day. (Dkt. 16). Defendant filed an amended brief

---

\* The Report and Recommendation is being amended solely for the purpose of including language related to review of the Report and Recommendation by the district judge based upon a timely filed objection by either party. While not required to be included in the Report and Recommendation by statute or court rule, such language is customarily included in a report and recommendation so that all parties are aware of their options for review and therefore the amendment is being made to serve that purpose. In light of the amendment, the time for review shall run from the entry of the amended report and recommendation.

1

regarding the motion the same day as well which appears to be substantially the same as the original brief. (Dkt. 18). The government filed its response to the motion on February 25, 2010. (Dkt. 20). Defendant sought to file an untimely reply to the government's response and was granted permission to do so on March 11, 2010. The reply was filed on March 12, 2010. (Dkt. 24). Oral argument on the motion was held on March 15, 2010.

**II.    Relevant Facts**

On April 3, 2008, Michigan State Police Detective Sergeant Mike Gillett presented a search warrant affidavit for a residence and outbuildings at 7200 N. Dort Highway, Mt. Morris Township. The property was located in Genesee County. The affidavit recited that D/Sgt. Gillett was conducting an investigation of a breaking and entering that had taken place on January 31, 2006, at Ed's Archery and Sporting Goods which was also located in Genesee County. SW Aff. par. 3(C). D/Sgt. Gillet had learned that during the breaking and entering a number of items had been taken including "several Matthews Archery bows." SW Aff. par. 3(D). On March 3, 2008, defendant Douglas Ray and his wife were interviewed and informed Gillet that at some unidentified point in the past they had purchased a number of items from a Danny Ranaldi including a "Matthews Bow." Mr. and Mrs. Ray reside at 7200 N. Dort Highway in Mt. Morris Township. SW Aff. par. 3(E)(1). On April 3, 2008, Gillet and a second Michigan State Police detective

were shown a Matthews FX Bow by Mr. Ray at an unidentified location. Ray identified that bow as the one purchased from Ranaldi for $300. The serial number on the bow was 355002. SW Aff. par. 3(E)(2). Ray said Ranaldi sold him the bow because Ranaldi had "just purchased" another Matthews Bow "from the dealer on Vienna Road." SW Aff. par. 3(E)(5). Ray also stated that Ranaldi "buys and sells items 'all the time' and has a history of unemployment." SW Aff. par. 3(E)(5). Ed's Archery is located on Vienna Road and is the only authorized dealer for Matthews bows in the area. SW Aff. pars. 3(D) and (E)(6).

Also on April 3, 2008, Gillet was informed by a representative of Matthews, Inc. that the bow in Ray's possession had been shipped to Ed's Archery on September 11, 2002. Additionally, Gillet was informed the company provides a lifetime warranty on this model of bow for the initial purchaser and maintains a registry of ownership of the bows. Based on a check of the company records, the bow in Ray's possession had not been registered with the company and Ranaldi did not have any bows registered in his name. SW Aff. pars. 3(E)(3) and (4). Gillet was aware that Ed's Archery could not confirm that his particular bow was taken during the theft. SW Aff. par. 3(E)(3).

Gillet stated that the Matthews bow had been observed at 7200 N. Dort Highway on April 3, 2008, and that individuals that "maintain" archery items keep them at their residence or their vehicles. SW Aff. pars. 3(F)(2) and (3).

The search warrant was issued by state Judge Odette based on this information. The warrant was approved by an Assistant Genesee County Prosecutor prior to being submitted to the judge or magistrate.

**III.  Analysis and Conclusions**

In defendant's motion he contends that the affidavit supporting the search warrant does not establish probable cause that evidence of a crime would be found in his residence.  The government asserts that the affidavit, when considered under the applicable legal standards, does establish probable cause for the issuance of the search warrant and, even if probable cause is lacking, the affiant executed the warrant in good faith reliance on the decision of the state judge to issue the warrant and therefore the evidence seized should not be suppressed.  Defendant's reply to the government's good faith claim is that the affiant could not have reasonably believed in the sufficiency of the affidavit and therefore the exclusionary rule should be applied to these circumstances.

Probable Cause

In order to establish probable cause for the issuance of a search warrant the affidavit provided to the issuing judge must demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009)(quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).  Whether the information in the affidavit satisfies the "fair

4

probability" requirement "depends on the totality of the circumstances." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). "The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *Id*. (quoting from *Gates*, 462 U.S. at 231).

The review of a judge's decision to issue a warrant should be done with "great deference" to the decision of the issuing judge. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000). Additionally, a reviewing court should only look to the "four corners" of the affidavit and not consider information that may be known to the affiant but not provided to the issuing judge in the affidavit. *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003).

A legally sufficient search warrant affidavit must demonstrate there is probable cause to believe that (1) contraband or evidence of a crime (2) will be found in a particular place. The majority of challenges to the sufficiency of a search warrant affidavit relate to the second factor and not the first. That is, most search warrant affidavits clearly identify the items to be searched for as contraband or evidence of a crime and seek to establish a nexus between those items and a particular location. In the present case, the only item that could arguably be considered contraband or evidence of a crime is a particular Matthews FX bow that Danny Ranaldi sold to defendant. With respect to the question of whether there was probable cause that the Matthews FX bow would be found at the defendant's

5

residence on April 3, 2008, there does not appear to be much doubt about that conclusion. The officers were told that defendant owned the bow, they observed the bow at defendant's residence on that date, the affiant stated, based on his experience, that individuals who have such items normally keep them in their residence and the search warrant was obtained the same date. The totality of those circumstances easily satisfies the probable cause standard that the bow would be at defendant's residence on April 3, 2008.

The more difficult question is whether the information in the affidavit establishes probable cause that the Matthews bow is contraband or evidence of a crime. The affidavit states that defendant purchased the bow, along with a number of other items, from Danny Ranaldi but does not provide much other information about Ranaldi. The affidavit does state that Ranaldi "buys and sells items 'all the time' and has a history of unemployment." It is very hard to draw an inference of criminal activity from that information. Defendant stated in his brief that Ranaldi was a suspect in the break-in of Ed's Archery in November of 2002 but the affidavit does not contain any information that states the same thing. The affidavit states that Matthews bows were taken during the break-in at Ed's Archery but there is no information that this bow was taken during the break-in. Further, there is no information that the other items sold by Ranaldi to defendant were items taken during the break-in at Ed's. The affidavit does not inform the issuing judge when

defendant purchased the bow from Ranaldi although the affidavit does state that Ranaldi sold the bow to defendant because Ranaldi had "just purchased" another Matthews bow from what would appear to be Ed's Archery based on Ed's being the only authorized dealer of Matthews bows in the area.

The only other information in the affidavit regarding the bow is that the bow was shipped to Ed's before the break-in, defendant paid $300 to Ranaldi for the bow and the bow was not registered with the company for warranty purposes. Even with the "great deference" that is to be given to the issuing judge, the undersigned cannot find that there was probable cause that the Matthews bow defendant purchased from Ranaldi was either contraband or evidence of a crime. The purchase of a bow from a person who buys and sells items on a regular basis, for a price that would not seem indicative of stolen property, approximately two years after a break-in where bows made by the same manufacturer were taken, even if the bow had not been registered for warranty purposes, does not amount to probable cause that this particular Matthews bow was stolen. Without a probable cause showing that the Matthews bow was evidence of a crime there was an insufficient basis for the search warrant to be issued.

## Good Faith

The alternate argument advanced by the government is that even if the "affidavit does not support a finding of probable cause, the officer's good faith reliance on a lawfully-obtained warrant precludes application of the exclusionary rule." (Dkt. 20, p. 6). "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in criminal proceedings against the victim of the illegal search and seizure." *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004). However, "[t]he fact that the Fourth Amendment violation occurred ... does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 129 S.Ct. 695, 700 (2009). Even if a reviewing court concludes that a warrant lacked probable cause, courts should not suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Carpenter*, 360 F.3d at 595 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). The related question is whether a reasonably well trained officer would have known that the search was illegal regardless of the decision of the issuing judge. *United States v. Higgins*, 557 F.3d 381, 391 (6th Cir. 2009). The Sixth Circuit, following *Leon*, has identified four specific circumstances where the good-faith exception to the exclusionary rule does not apply. Those circumstances are: (1) where the affidavit contains information the affiant knows or should have known to be false, (2) where the

issuing judge wholly abandoned his or her judicial role, (3) where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable or where the warrant application was supported by nothing more than a bare bones affidavit or (4) where the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004). Defendant argues that this affidavit falls under the "so lacking" exception to the application of the good-faith rule. (Dkt. 24, p. 2).

The "so lacking" test is less demanding than the "substantial basis" test for determining the existence of probable cause so the mere lack of probable cause does not preclude the application of the good faith rule. *Washington*, 380 F.3d at 241. The present affidavit is not a "bare bones" affidavit that contains merely conclusions by the affiant.[**] D/Sgt. Gillet had gathered information from defendant and his wife, from the investigation of the break-in at Ed's Archery, and from the manufacturer of the Matthews FX bow. These facts, rather than conclusions, were included in the affidavit and presented to the judge who decided probable cause did exist. Also, the warrant had been approved by an assistant

---

[**]A bare bones affidavit is one that contains "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996).

prosecutor before being submitted to the judge. The nexus between the Matthews FX bow and the location to be searched was very clear. A reasonably trained officer would not have known the search was illegal despite the decision by the judge to issue the warrant. The undersigned concludes that the facts in the affidavit, while perhaps not amounting to a substantial basis to issue the search warrant, were sufficient to not be so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The exclusionary rule need not be applied to these circumstances despite the lack of probable cause for the issuance of the search warrant.

## IV. RECOMMENDATION

Based on the above, the undersigned recommends that defendant's motion to suppress be denied.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

|  |  |
|---|---|
| Date: April 20, 2010 | s/Michael Hluchaniuk<br>Michael Hluchaniuk<br>United States Magistrate Judge |

# **CERTIFICATE OF SERVICE**

  I certify that on April 20, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following <u>Nancy A. Abraham, AUSA, and Edward M. Czuprynski</u>, and I certify that I have either hand delivered/ mailed by United States Postal Service the paper to the following non-ECF participants: <u>Pretrial Services Agency and U.S. Marshal Service</u>.

                s/Tammy Hallwood
                Case Manager
                U.S. District Court
                600 Church Street
                Flint, MI 48502
                (810) 341-7887
                tammy_hallwood@mied.uscourts.gov